UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL WOODS, | ) |
|               Plaintiff, | ) ) ) |
|               v. | ) Case No. 1:20-cv-01158-TWP-DML ) |
| HEATHER BLASINGAME, Unit Team Manager, ANDREA MASON, Supervision of Classification, F. REEVES, Casework Manager/Correctional Counselor, A RITTENBERG, Correctional Counselor, and BRIAN MIFFLIN, Casework Manager/ Correctional Counselor, | ) ) ) ) ) ) ) |
|               Defendants. | ) ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Heather Blasingame, Andrea Mason, Faith Reeves, Ally Rittenberg, and Brian Mifflin (collectively, the "Defendants"). Plaintiff Michael Woods ("Mr. Woods"), an Indiana Department of Correction inmate, filed this action alleging that the Defendants transferred him to a more restrictive housing unit because he submitted an informal grievance. The Court screened Mr. Woods's Complaint and dismissed his claims against several defendants. The remaining Defendants have moved for summary judgment, and the motion is fully briefed. Because no reasonable jury could find from the undisputed facts that any Defendant retaliated against Mr. Woods, the Defendants are entitled to summary judgment.

**I.      STANDARD OF REVIEW**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Federal Rule

of Civil Procedure 56(a).  Once the moving party has met its burden, "the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015).  A disputed fact is material if it might affect the outcome of the suit under the governing law.  *Williams v. Brooks*, 809 F.3d 936, 941–42 (7th Cir. 2016).  "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder.  *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).  The court may rely only on admissible evidence.  *Cairel v. Alderen*, 821 F.3d 823, 830 (7th Cir. 2016).  And the facts asserted in an affidavit to support or oppose summary judgment must be based on personal knowledge. Fed. R. Civ. P. 56(c)(4).

## II.     UNDISPUTED FACTS

### A.     The Parties

At all relevant times, Mr. Woods was an inmate and the Defendants were all staff members at Wabash Valley Correctional Facility.

Defendant Ally Rittenberg ("Ms. Rittenberg") was a caseworker in Lincoln Housing Unit ("LHU").  Defendant Heather Blasingame ("Ms. Blasingame") was a unit team manager in LHU. Defendant Faith Reeves ("Ms. Reeves") was a casework manager and correctional counselor in LHU. Defendant Brian Mifflin ("Mr. Mifflin") was a casework manager and correctional

counselor in George Housing Unit ("GHU"). Defendant Andrea Mason ("Ms. Mason") was the prison's supervisor of classification.

**B.     Mr. Woods' Housing Transfer**

Mr. Woods was housed in LHU, which is generally reserved for inmates with prison jobs or those who are enrolled in prison programs. (Dkt. 64-9; Dkt. 64-13 at 2, ¶ 10.) Inmates may be moved out of LHU due to prison needs, including to make room for eligible inmates awaiting transfer to a work-eligible housing unit. (Dkt. 64-4 at 2.) Mr. Woods was put on idle − no pay ("INP") status for 180 days beginning in May 2019 for refusing to participate in a substance abuse recovery program. (Dkt. 64-3 at 1.) It is common practice for inmates on INP status to be moved out of LHU to make room for work-eligible inmates. (Dkt. 64-7 at 2, ¶ 12.)

But Mr. Woods was not moved out immediately; he was still in LHU in August 2019 when he tried to mail money to his brother outside the prison. (Dkt. 72 at 2, ¶ 4.) Ms. Rittenberg declined to send the money because of address discrepancies. *Id.* On August 19, 2019, Mr. Woods submitted an informal grievance against Ms. Rittenberg. (Dkt. 64-8 .) She received the informal grievance on August 20, 2019. (Dkt. 64-11.) Ms. Rittenberg's supervisor, Ms. Reeves, responded to the informal grievance on August 22, 2019. (Dkt. 64-8; Dkt. 64-13 at 1, ¶ 6.)

On August 20, 2019, the day after Mr. Woods submitted his informal grievance, Ms. Reeves moved him and his cellmate out of LHU into GHU. (Dkt. 64-10; Dkt. 64-2 at 62.) The listed reason was "INP idle" (Dkt. 64-10). The same day, two inmates were transferred into Mr. Woods' cell from GHU. The listed reason for those inmates' transfers was "ED-XA-VOA-STUVOA06-D-I VOA," which means "Education – Classroom Area A – Vocation – Student – pay rate – inside of the building." *Id.*; Dkt. 64-12 at 1, ¶ 6. Ms. Blasingame, Ms. Mason, Ms. Rittenberg, and Mr. Mifflin all testify that they did not make the decision to transfer

3

Mr. Woods. (Dkt. 64-6 at 2, ¶¶ 11−12; Dkt. 64-7 at 2, ¶ 13; Dkt. 64-11 at 2, ¶ 11; Dkt. 64-13 at 2, ¶ 13.)

After Mr. Woods was moved, he asked Mr. Mifflin why he was transferred, and Mr. Mifflin told him that it was due to his INP status. Mr. Woods believed that inmates were sent to GHU only for conduct reports or when they were leaving segregated housing. Mr. Woods asked Mr. Mifflin for the classification hearing report, and Mr. Mifflin passed the request to Ms. Mason. But Ms. Mason never produced the report, even though she said she would. (Dkt. 72 at 3−4, ¶ 7.) Mr. Woods believes that Mr. Mifflin and Ms. Mason were lying to cover up a retaliatory housing transfer. *Id.* at 3−4, ¶¶ 6−7.

Mr. Woods testified that inmates in LHU get "extra rec on weekends," which GHU inmates did not get. (Dkt. 64-2 at 41.) LHU also has recreation time with more inmates at once. *Id.* And GHU inmates' "law library time is more limited . . . because of them having to separate so many houses on the side to fit to go over there." *Id.* at 41−42. Mr. Woods also asserts that he was subject to more lockdowns at LHU than he was at GHU. *Id.* at 42−44.

### III.   DISCUSSION

To survive summary judgment on a retaliation claim, Mr. Woods must have enough evidence for a reasonable jury to find that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity; and (3) the protected activity engaged in was at least a motivating factor for the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (cleaned up). He must also present evidence that each Defendant was personally involved in the alleged constitutional deprivation. *Wojcik v. Cook Cty.*, 803 F. App'x 25, 27 (7th Cir. 2020) ("Only someone personally responsible in a

constitutional violation can be held liable under [42 U.S.C.] § 1983."); *Wilson v. Warren Cty., Ill.*, 830 F.3d 464, 469 (7th Cir. 2016) (same).

The Court assumes for purposes of this Order that Mr. Woods can satisfy the first element of a retaliation claim. *See Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) ("[F]iling a non-frivolous grievance is a constitutionally protected activity sufficient to support a retaliation claim."). Nevertheless, Ms. Blasingame, Ms. Mason, Ms. Rittenberg, and Mr. Mifflin are all entitled to summary judgment because there is no evidence they were personally involved in the decision to transfer Mr. Woods. Ms. Reeves was involved in the transfer, but she too is entitled to summary judgment because no reasonable jury could find that housing transfer was an adverse action likely to deter First Amendment activity.

**A.    Ms. Blasingame, Ms. Mason, Ms. Rittenberg, and Mr. Mifflin**

Ms. Blasingame, Ms. Mason, Ms. Rittenberg, and Mr. Mifflin all testify that they did not initiate the transfer. (Dkt. 64-6 at 2, ¶¶ 11−12; Dkt. 64-7 at 2, ¶ 13; Dkt. 64-11 at 2, ¶ 11; Dkt. 64-13 at 2, ¶ 13.) And Mr. Woods has identified no evidence that they were otherwise involved in the decision.

Mr. Woods suggests Mr. Mifflin and Ms. Mason failed to provide him with a classification hearing report because they were trying to cover up the allegedly retaliatory transfer. (Dkt. 72 at 3−4, ¶ 6−7.) But "[s]peculation is no substitute for evidence at the summary judgment stage." *Bass v. Joliet Pub. School Dist. No. 86*, 746 F.3d 835, 841 (7th Cir. 2014). And Mr. Woods offers no more than speculation that Mr. Mifflin and Ms. Mason withheld paperwork in an attempt to cover up the real reason for his transfer.

Because no reasonable jury could find based on the undisputed evidence that Ms. Blasingame, Ms. Mason, Ms. Rittenberg, or Mr. Mifflin were involved in the decision to transfer Mr. Woods, these Defendants are all entitled to summary judgment.

**B.** **Ms. Reeves**

Ms. Reeves was personally involved in the transfer, but she is still entitled to summary judgment because no reasonable jury could find that the transfer was an adverse action likely to deter First Amendment activity.

An adverse action for First Amendment retaliation purposes must "be sufficiently clear and emphatic to deter a person of 'ordinary firmness' from submitting such petitions in the future." *Hughes v. Scott*, 816 F.3d 955, 956 (7th Cir. 2016). This is an objective standard, but it must be applied with the prison setting in mind. *Holleman v. Zatecky*, 951 F.3d 873, 880 (7th Cir. 2020) ("[T]he harsh realities of a prison environment affect our consideration of what actions are sufficiently adverse."). "Without some additional aggravating factor, such as relocation to a much more restrictive or dangerous environment, a [prison] transfer is not likely to deter a person of ordinary firmness from continuing to engage in protected conduct." *Id.* at 882.

The Seventh Circuit has not elaborated on what constitutes a "much more restrictive or dangerous environment," but the facts of *Holleman* are instructive. Holleman alleged that he received less law library time, was made to share a cell, and witnessed more violence in his new prison. *Id.* at 881. In affirming the district court's grant of summary judgment, the Seventh Circuit described these as "minor differences in the policies and conditions of the facilities." *Id.* The Seventh Circuit also noted that the relevant decisionmaker must be aware that a transfer will cause a change in circumstances if it is to constitute an adverse action. *Holleman*, 951 F.3d at 881 ("The changes in circumstance [Holleman] does allege—less law library time, being made to share a cell,

and having to witness more violence—do not transform the transfer into an adverse action because there is no evidence the Defendants knew the transfer would result in these incidental changed conditions."). But the Court does not read this additional language to suggest that transfer to a new location with "minor differences" constitutes an adverse action merely because the decisionmaker knew about those minor differences when she made the transfer.

Here, Mr. Woods points to no evidence that he was subjected to—or even witnessed— more violence in GHU than in LHU. He does testify that GHU was more restrictive because: (1) he was deprived of "extra rec on weekends," (2) fewer inmates were allowed to go to recreation at once, (3) his law library time was more limited, and (4) he was subjected to additional lockdowns due to other inmates' bad behavior. (Dkt. 64-2 at 41−44.) But these differences in conditions are closely analogous to the "minor differences" identified in *Holleman*. If Holleman was not transferred to a much more restrictive prison, then Mr. Woods was not transferred to a much more restrictive cell house.

Based on the designated evidence, no reasonable jury could find that the transfer to GHU from LHU was an adverse action likely to deter a prisoner of ordinary firmness from exercising his First Amendment rights. Ms. Reeves is therefore entitled to summary judgment.[1]

### IV. CONCLUSION

The Defendants' Motion for Summary Judgment, Dkt. [64], is **GRANTED**. All claims in this action are now resolved, and final judgment shall enter.

**SO ORDERED.**

---

[1] Ms. Reeves, like the other Defendants, argues that she is entitled to qualified immunity because "[i]t was not clearly established in August 2019 that moving Plaintiff from LHU to GHU due to his INP status constitutes a First Amendment retaliation violation." (Dkt. 65 at 12.) But this argument rests on the factual premise that Mr. Woods was transferred "due to his INP status." *Id.* And the timing of his transfer creates a disputed issue of fact as to whether Ms. Reeves's motivation was at least partly retaliatory. *See FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 586 (suspicious timing may be enough to show causation where an adverse action follows "close on the heels" of protected activity).

Date: 2/11/2022

*[Signature]*

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Michael Woods, #911570
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Conner Ross Dickerson
INDIANA ATTORNEY GENERAL'S OFFICE
conner.dickerson@atg.in.gov

Zachary Robert Griffin
INDIANA ATTORNEY GENERAL'S OFFICE
zachary.griffin@atg.in.gov